IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

MICHAEL HOELCEL                                                                              PLAINTIFF

v.                                              5:04CV00275HLJ

ARKANSAS DEPARTMENT
OF CORRECTION, et al.                                                                    DEFENDANTS

MEMORANDUM AND ORDER

I.  Introduction

This matter is before the Court on the defendants' motions for summary judgment (DE ##86, 89).  Plaintiff has filed responses to the motions (DE ##96, 101), and defendants have filed motions to deem admitted their statements of indisputable material facts (DE ##92, 93).

Plaintiff is a former state inmate of the Arkansas Department of Correction (ADC).  He filed this action pursuant to 42 U.S.C. § 1983, alleging violations of the Americans with Disabilities Act (ADA) and the Eighth Amendment, in connection with the treatment of his serious eye condition which eventually led to his blindness.  Specifically, plaintiff alleges defendants were deliberately indifferent to his serious medical needs by failing to provide him with cataract surgery in March, 2004, and that the resulting pressure in his eyes damaged his optical nerve, causing glaucoma and resulting in blindness.  Plaintiff names as defendants: the ADC and the Arkansas Board of Correction; ADC employees John Byus, Max Mobley, Larry Norris, and Rick Toney; Correctional Medical Services, Inc (CMS), the medical services contractor for the ADC; CMS employee Dr. Roland Anderson, and Dr. Jonathan Simmons, an optometrist who contracts with CMS to provide eye care to the inmates.   Plaintiff asks for monetary relief from defendants.

II. Facts

According to the mostly undisputed facts set forth by the parties, including portions of plaintiff's medical records, plaintiff was incarcerated at the ADC from 2001 until July 14, 2005. During most of this time, plaintiff was housed in the Jefferson County Jail Unit of the ADC.

Plaintiff was initially evaluated by Dr. Simmons on July 11, 2002, at which time his intra ocular pressure (IOP) registered as normal. Corneal scarring was noted and bifocals and Tobradex were prescribed for the plaintiff. See DE #88, Ex. 1, Ex. 4 p. 1. A second visit in April, 2003 revealed normal IOP. Id. On March 11, 2004, plaintiff's IOP was again unchanged, and cataracts were noted. Dr. Simmons recommended in his "Provider Consult Report" that cataract surgery would benefit plaintiff, and that he should have a follow-up visit within six months. Id. Plaintiff then filed a grievance, on March 18, 2004, complaining about the lack of surgical treatment for his cataracts. See DE #99, Ex. 3. This grievance was not answered by the Infirmary until June 9, 2004, and defendant Mobley later noted that although there was a delay in the grievance response, plaintiff's medical records showed he was to be seen again by the eye doctor in less than six months for a check up. DE #91, Ex. 3. When plaintiff was examined by Simmons on September 9, 2004, his IOP was normal, but his vision had worsened and Simmons recommended a visit to an opthamologist. Plaintiff was sent to the Jones Eye Institute on September 20, 2004, at which time his IOP had increased and he was diagnosed with glaucoma. Ex. 1, Ex. 4.

Sometime following his initial appointment with the opthamologist, plaintiff became blind. He was released from the ADC in July, 2005, and underwent eye surgeries on September 27, 2005, October 25, 2005, and November 8, 2005. Plaintiff remains blind.

III.  ADC Summary Judgment Motion

A.  ADC Motion

The ADC, Board of Correction, and officials Norris, Mobley, Byus, and Toney, move for summary judgment for the following reasons: 1) plaintiff's deposition testimony establishes no ADA claim, in that he acknowledges that no ADC officials denied him access to health services request forms or medical treatment; 2) ADC officials are not involved in medical treatment decisions, and therefore, can not be held liable for diagnostic decisions made by medical staff; 3) plaintiff fails to establish that these defendants were aware of his problems and deliberately denied him medical care and treatment; 4) plaintiff can not sue these defendants based on their supervisory capacities.

B.  Plaintiff's Response

In his response, plaintiff states that he vigorously sought medical treatment while at the ADC and filed numerous complaints and grievances about such.  Specifically, plaintiff filed grievances on March13 and March 18, 2004, following his visit with Dr. Simmons, complaining that he was diagnosed with cataracts but that Dr. Simmons told him he would almost have to be blind before surgery could take place.   Plaintiff states that the ADC defendants were aware of his problems, through this grievance, and that their failure to correct the problem resulted in his blindness. Plaintiff also relies on an affidavit which he provided to defendants on January 29, 2004, detailing his medical history and lack of adequate treatment.  See DE #100, Ex. 2.

C.  Standard of Review/Applicable Law

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  See  Dulaney v. Carnahan, 132 F.2d 1234, 1237 (8th Cir. 1997).  "The moving party bears

the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials of allegations in the pleadings; rather, the non-movant must set forth specific facts showing that there is a genuine issue for trial." Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

In order to support a claim for an Eighth Amendment violation, plaintiff must allege and prove that defendants were deliberately indifferent to a serious medical need. Farmer v. Brennan, 511 U.S. 825, 827 (1994). However, even negligence in diagnosing or treating a medical condition does not constitute a claim of deliberate indifference. Estelle v. Gamble, 429 U.S. 197 (1976). Rather, the "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation," Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). See also Smith v. Marcantonio, 901 F.2d 500, 502 (8th Cir. 1990) (holding that a mere disagreement with a course of medical treatment is insufficient to state a claim for relief under the Eighth Amendment).

In addition, an official who was not involved in the treatment decisions which are made by the Unit's medical staff, and who lacks medical expertise, can not be held liable for the medical staff's diagnostic decisions, Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997). See also Camberos v. Branstad, 73 F.3d 174 (8th Cir. 1995). Finally, a medical indifference claim must be

brought against the individual or individuals directly responsible for the inmate's medical care, Keeper, supra at 1314.  A supervisor is not held liable for an employee's actions under § 1983 unless the supervisor "is personally involved in the violation or when the supervisor's corrective inaction constitutes deliberate indifference toward the violation.  Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995).

D.  Analysis

1) Defendants Toney and Norris - In his deposition, plaintiff states that none of the ADC defendants prevented him from completing health service request forms or from accessing the infirmary.  He also states he did not intend to sue defendant Toney, because another Warden was present at the Unit during most of the relevant time.  Furthermore, plaintiff acknowledges never having talked with defendant Norris and never filing a written complaint with him.  Therefore, no evidence exists that these two defendants were aware of plaintiff's medical problems or acted in reckless disregard or deliberate indifference to them.

2) Defendants Mobley and Byus - Plaintiff relies on the grievance filed with defendant Mobley, and complaints allegedly written to defendant Byus, as the basis for their liability.  Plaintiff acknowledges that defendant Mobley responded to his grievance, and while finding that the response was indeed delayed, denied the grievance as without merit.  However, he does not dispute Mobley's reliance on the medical records to find that plaintiff was scheduled for a six-month followup visit in September, 2004.  In addition, in his grievance response defendant Mobley also advised plaintiff to submit sick call requests if further assistance was needed.  Plaintiff does not allege that he submitted any such requests between the time of the grievance response in June and his subsequent appointment with Dr. Simmons in September, 2004.  With respect to defendant Byus, plaintiff is not

specific about his complaints against defendant, and acknowledged in his deposition that he wasn't really suing either one of these defendants other than because they were in the "pecking order." DE #91, Ex. 2. Therefore, because it appears that plaintiff is suing these defendants based on their supervisory capacities only, the Court finds that plaintiff has not provided any evidence of specific involvement by three of these individuals, and that defendant Mobley's knowledge of his grievance complaint is insufficient to support a claim for deliberate indifference.

### IV. CMS Summary Judgment Motion

#### A. CMS Motion

In support of their motion, the CMS defendants state that plaintiff has not provided evidence to support a claim of injury due to any action or inaction by them, and that plaintiff's speculation that had he seen an opthamologist sooner, his sight may have been saved, is not supported by any evidence. Furthermore, defendants state that plaintiff provides no proof that they acted with deliberate indifference against him. Dr. Simmons recommended cataract surgery and the failure to follow up on that recommendation was not his fault, but rather, the failure of a non-party physician to complete a consult request form to present to Dr. Anderson. DE #88, Ex. 1. Furthermore, plaintiff's IOP at all appointments registered as normal. In addition, Dr. Anderson never examined plaintiff and has no record of having communicated with him. DE #88, Ex. 2. The only consult request presented to Dr. Anderson was in September, 2004, which he approved. Finally, plaintiff does not allege any specific unconstitutional policy or procedures against defendant CMS, and appears to be suing it based on the actions of its employees.

#### B. Plaintiff's Response

In response, plaintiff states that Dr. Simmons was aware of his cataract condition and of the risk of harm to his health in March, 2004, and should not have scheduled plaintiff for a six-month checkup.

Furthermore, during the time between the March, 2004 and September, 2004 visits, plaintiff's condition substantially worsened and when he was treated by the opthamologist in September, 2004, his IOP pressure had increased and he was diagnosed with glaucoma. Plaintiff alleges that CMS is at fault for failing to arrange for cataract surgery in March, 2004.

C. Analysis

1) Dr. Simmons - Plaintiff does not dispute that as a contract physician, Dr. Simmons was limited to merely recommending surgery, and he also does not dispute that Dr. Simmons did in fact recommend cataract surgery in March, 2004. In addition, he does not dispute that a non-party physician failed to forward a consult request to Dr. Anderson in March, 2004. However, plaintiff places liability for delayed treatment on Dr. Simmons due to a statement allegedly made to plaintiff, that he would not be approved for cataract surgery until he was nearly blind. Plaintiff also does not dispute that at the time of his examinations with Dr. Simmons, his IOP pressure registered normal. In his declaration in support of the motion, Dr. Simmons states that his March 2004 recommendation "was not commented on by the unit physician or passed to the Medical Director. Since I am not a CMS physician at the Unit, I can do nothing more than make a recommendation in my report. I have no other authority or control relating to the treatment of the patient once I have made my recommendation." . Plaintiff has provided no proof to counter this declaration with respect to his responsibility. Furthermore, Dr. Simmons also stated that cataracts have no connection to glaucoma, and therefore, the delay in his surgery could not have caused his glaucoma. Again, plaintiff provides no affidavit or medical evidence to rebut this statement.

This case was originally scheduled for a jury trial on May 29, 2007, but has been continued pursuant to defendants' motion. In light of such, and in an abundance of caution, the Court will provide plaintiff with one final opportunity in which to submit additional evidence or affidavits showing a

7

genuine issue of material fact with respect to these allegations against Dr. Simmons.

2). Dr. Anderson - Plaintiff provides no proof of any connection with Dr. Anderson. Plaintiff does not allege that he contacted or communicated with Dr. Anderson, or that Dr. Anderson was even aware of plaintiff's condition. Plaintiff stated in his deposition that he was suing Dr. Anderson because he was responsible for appropriating money for people to go to outside doctors. Again, as noted earlier, respondeat superior liability is not applicable in an action filed pursuant to 42 U.S.C. § 1983.

3) CMS - Finally, with respect to defendant CMS, plaintiff appears to claim that it is responsible for failing to appropriate funds for his cataract surgery, but he provides no proof of such and no allegation of an unconstitutional policy which resulted in this action.. In addition, in his deposition, plaintiff states that he sued CMS because the medical personnel would not allow him to see Dr. Simmons before his scheduled six-month followup. However, plaintiff again provides no proof that he submitted a formal sick call request or other need for medical attention after the filing of his grievance in March, 2004, and he does not allege that any of the named defendants were responsible for denying additional requests for medical attention.

In light of the Court's decision with respect to Dr. Simmons, the Court will also permit plaintiff to provide additional evidence to show a genuine issue of material fact with respect to his allegations against defendant CMS.

In conclusion, the Court finds no dispute of material fact with respect to plaintiff's allegations against the ADC defendants, and against CMS defendant Dr. Anderson, and that these defendants are entitled to judgment as a matter of law on plaintiff's complaint against them. Plaintiff will be provided an opportunity to supplement his brief with respect to the remaining two defendants, and defendants will be provided an opportunity to thereafter reply. Accordingly,

IT IS, THEREFORE, ORDERED that the motions for summary judgment filed by defendants

Arkansas Department of Correction, Arkansas Board of Correction, Max Mobley, Larry Norris, Rick Toney, John Byus, and Roland Anderson, (DE ###86, 89) are hereby GRANTED, and plaintiff's complaint against these defendants is DISMISSED with prejudice.

IT IS FURTHER ORDERED that plaintiff shall file additional evidence and or affidavits in support of his claims against defendants Simmons and CMS within fifteen days of the date of this Order. Defendants shall file a response to such within fifteen days of the filing. Ruling on the motions for summary judgment filed by defendants Simmons and CMS is hereby STAYED, pending receipt of the additional materials from the parties.

IT IS FURTHER ORDERED that all other pending motions are hereby DENIED as moot..

IT IS SO ORDERED this 5th day of June, 2007.

*Henry L. Jones, Jr.*
United States Magistrate Judge